Michael J. Frevola
Christopher R. Nolan
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York 10007-3189
Tel.: (212) 513-3200
Fax: (212) 385-9010
E-mail: michael.frevola@hklaw.com
        chris.nolan@hklaw.com

Attorneys for Plaintiff
*OSM Ship Management AS*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OSM SHIP MANAGEMENT AS,<br><br>　　　　　　　　　Plaintiff,<br><br>　　- against -<br><br>TRANSATLANTIC LINES INC.,<br><br>　　　　　　　　　Defendant. | 08 Civ. _____ (___)<br><br>**VERIFIED COMPLAINT** |



Plaintiff, OSM Ship Management AS ("OSM"), by and through its attorneys, Holland & Knight LLP, for its verified complaint against Transatlantic Lines Inc. ("Transatlantic"), alleges as follows:

## JURISDICTION AND THE PARTIES

1.　　This is a case of admiralty and maritime jurisdiction under 28 U.S.C. § 1333 as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. At all times material herein, plaintiff OSM was and is a business entity organized and existing under the laws of a foreign nation and maintains an address at Rådhusgaten 3, 4661 Kristiansand, Norway.

3. Upon information and belief, at all material times herein, defendant Transatlantic was and is a business entity organized and existing under the laws of a foreign nation, and maintains an address c/o Atlantic Management S.A., 21 Aktl Miaouli Stre., Piraeus, 18535 Greece.

## OSM'S CLAIM AGAINST TRANSATLANTIC

4. Transatlantic is the owner of the MT "MADONNA" (the "Vessel").

5. On or about January 22, 2008, OSM and Transatlantic entered into a Ship Management Agreement on a modified BIMCO "SHIPMAN 98" form, whereby OSM agreed to manage the Vessel (the "Management Agreement"). A true and correct copy of the Management Agreement is attached hereto as Exhibit 1.

6. Pursuant to the Management Agreement, as Vessel Manager, OSM was obligated to provide a number of essential services to the Vessel (the "Management Services") including, but not limited to the following:

   a. *Crew Management:* whereby OSM was required to (1) provide, select and engage a suitably qualified Crew for the Vessel; (2) make due arrangement for the Crew's payroll, insurance, certifications, and discipline on-board the Vessel (where necessary); (3) ensure that each member of the crew passed a medical examination certifying the individual Crewmembers' respective fitness for the duties for which they are engaged, and ensure that each member of the Crew has a sufficient command of the English language; (4) arrange for transportation of the

Crew, including repatriation where necessary; (5) train the Crew and supervise the Crew's efficiency (*see* Management Agreement (Exhibit 1), Clause 3.1);

b. *Technical Management:* whereby OSM was required to (1) provide competent (OSM) personnel to supervise the maintenance and general efficiency of the Vessel; (2) arrange for repairs required by Transatlantic or required or recommended by the Vessel's classification society; (3) arrange for the supply of necessary stores, spares parts and lubricating oil; (4) develop and implement a Safety Management System on-board the Vessel in accordance with the ISM Code (*see* Management Agreement (Exhibit 1), Clause 3.2); and

c. *Provisions Supply:* whereby OSM was required to supply all provisions to the Vessel, including but not limited to food, drink, water, cooking ingredients and other goods necessary for the maintenance of the Crew and the operation of the Vessel (*see* Management Agreement (Exhibit 1), Clause 3.7).

7.      The services provided by OSM to Transatlantic are maritime in nature and the Management Agreement is a maritime contract.[1]

---

[1] In *Hadkupateras v. Pacifica, S.A.*, 290 F.2d 697 (5th Cir. 1961), the Fifth Circuit held that a contract for management and operation of a vessel was a maritime contract since it was "everything classically known as a maritime contract." *See also Elmwood Dry Dock & Repair v. H & A Trading Co.*, 1998 A.M.C. 2681 (E.D.La 1997) (a vessel management contract is a maritime contract and disputes arising thereunder are subject to admiralty jurisdiction). Furthermore, with regard to the crewing of the Vessel and the training of the crew, it is hornbook law that seamen enjoy special protection of the courts: they are the "wards of admiralty," and their rights, wrongs and injuries a special subject of the admiralty jurisdiction. *Benedict's Admiralty*, 4th ed., §§ 182, 603. The policy of Congress, as evidenced by its legislation, has to deal with them as a favored class. *Robertson v. Baldwin*, 165 U.S. 275, 287 (1897).

3

8. In consideration of the Vessel Management Services provided by OSM, and pursuant to clause 8.1 of the Management Agreement, OSM was entitled to an annual management fee of $170,000 from Transatlantic, payable in advance in monthly installments of $14,166.67 and due each month.

9. On or about October 1, 2008 and November 1, 2008, OSM respectively issued invoices to Transatlantic for the October and November management fee installments (the "Management Fee Invoices"), each in the amount of $14,166.67. True and correct copies of the Management Fee Invoices are attached hereto as Exhibit 2.

10. To date, OSM has not received payment on either of the Management Fee Invoices, totaling $28,333.34, and the payments are now past due.

11. Pursuant to clause 8.3 of the Management Agreement, Transatlantic is obligated to reimburse OSM expenses incurred by OSM in its "pursuance of the Management Services." Clause 26 of the Management Agreement modifies clause 8 to provide that all sums necessarily expended by OSM to fulfill any of its obligations with respect to the maintenance and/or management of the Vessel shall be reimbursed by Transatlantic.

12. Pursuant to clause 7.2 of the Management Agreement, all expenses incurred by OSM under the terms of the Management Agreement shall be payable by Transatlantic to OSM "on demand."

13. On or about August 5, 2008 through November 5, 2008, OSM issued a series of invoices to Transatlantic for expenses OSM properly incurred in the performance of its management duties. Transatlantic is indebted to OSM as follows – excluding interest, expenses and attorneys' fees:

| Date | Service Supplier | Voucher Number | Original Currency Amount | US$ Amount | Description of Reimbursable Expenses |
|---|---|---|---|---|---|
| 08/05/08 | Seatrade-Agencia Maritima De Angola | 400000058 | 20,526.69 | 20,526.69 | Crew Management /Agent Assistance - July |
| 09/02/08 | Seatrade-Agencia Maritima De Angola | 400000081 | 482,515.54 (AKZ) | 6,416.43 | Crew Management / Agent Assistance - August |
| 09/30/08 | OSM | 400010048 | 59,385.95 (NOK) | 8,704.00 | Superintendent Travel Expenses[2] |
| 10/02/08 | A.A.C. Shipchandler | 400000068 | 169,158.95 (Kz) | 2,255 | Supply Provisions (foodstuffs) |
| 10/02/08 | A.A.C. Shipchandler | 400000069 | 197,409.51 (Kz) | 2,632 | Supply Provisions (foodstuffs) |
| 10/08/08 | Virtek Communication | 400000071 | 3574 | 520 | Crew management - Support and telecom[3] |
| 10/21/08 | OSM | 400000073 | 8211.41 (NOK) | 1,752 | Crew Management – Safety Shoes for crew; Superintendent Expenses |
| 10/23//08 | DHL | 400000072 | 1586.90 (NOK) | 233 | DHL Expenses[4] |
| 10/26/08 | A.A.C. Shipchandler | 400000074 | 52,864.50 (Kz) | 705 | Supply Provisions (foodstuffs) |
| 10/26/08 | A.A.C. Shipchandler | 400000075 | 141,120.00 (Kz) | 1,882 | Supply Provisions (water) |
| 10/26/08 | A.A.C. Shipchandler | 400000076 | 191,053.16 (Kz) | 2,547 | Supply Provisions (foodstuffs) |
| 10/26/08 | A.A.C. Shipchandler | 400000077 | 145,309.54 (Kz) | 1,937 | Supply Provisions (foodstuffs) |

---

[2]  Pursuant to clause 33 of the Management Agreement, Transatlantic has the liberty of placing a Superintendent on board the vessel at its own expense. *See* Exhibit 1.

[3]  Pursuant to clause 8.3 of the Management Agreement, Transatlantic is obligated to reimburse OSM for "postage and *communication expenses*, traveling expenses and other out of pocket expenses properly incurred by OSM."

[4]  Pursuant to clause 8.3 of the Management Agreement, Transatlantic is obligated to reimburse OSM for "*postage* and communication expenses, traveling expenses and other out of pocket expenses properly incurred by OSM."

| Date | Vendor | Invoice # | Amount | USD | Description |
|---|---|---|---|---|---|
| 10/26/08 | A.A.C. Shipchandler | 400000078 | 263,643.45 (Kz) | 3,515 | Supply Provisions (foodstuffs) |
| 10/27/08 | Sandvik Marine Electronics | 400000080 | 1,040 (E) | 1,332 | Technical Management – Procurement of SBM Certificate[5] |
| 10/28/08 | Via Travel | 300048509 | 2,104.41 | 2,104.41 | Crew Management – Crew travel expenses (Larry Fabro) |
| 10/28/08 | Via Travel | 300048510 | 2,104.41 | 2,104.41 | Crew Management – Crew travel expenses (Jose Lamela) |
| 10/28/08 | Via Travel | 300048511 | 2,104.41 | 2,104.41 | Crew Management – Crew travel expenses (Rupert Orbe) |
| 10/28/08 | Via Travel | 300048512 | 2,104.41 | 2,104.41 | Crew Management – Crew travel expenses (Raul Ybanez). |
| 10/31/08 | A.A.C. Shipchandler | 400000082 | 54,185.00 (Kz) | 722 | Supply Provisions (foodstuffs) |
| 10/31/08 | OSM | 400010054 | 3,857 (NOK) | 565 | Technical Management - Q88 Subscription and outlays |
| 10/31/08 | OSM | 400010055 | 11,968.25 | 1752 | Superintendent Travel Expenses |
| 11/01/08 | OSM | 400010052 | 2,667 (NOK) | 391 | Crew Management – Support, Postage and Telecom |
| 11/05/08 | Seatrade | 100024215 | 1,064,064.21 (AKZ) | 14,149.79 | Crew Management – Repatriation, transportation, telecommunication |
| **TOTAL** | | | | **80,954.55** | |

---

[5] Please note that while this invoice is not yet "due" or "payable" by OSM to Sandvik Marine, OSM has in fact provided payment to Sandvik Marine, and therefore, the expenditure is immediately reimbursable to OSM by Transatlantic under the terms of the Management Agreement.

## The Reported Imminent Sale of the Vessel

14. Through documents that OSM has been asked to complete as the Vessel's manager related to the prospective sale of the Vessel, Transatlantic appears to be in the process of selling the Vessel. The sale of the Vessel is believed to be imminent.

15. From managing Transatlantic's Vessel, it appears to OSM that Transatlantic is a "single ship company" which has no assets other than the Vessel itself.

16. OSM is aware of at least one ship's mortgage that presently is recorded against the Vessel.

17. If the Vessel is sold, it is likely that the purchaser of the Vessel will convey a portion of the purchase price to Defendant Transatlantic's lenders possessing the mortgage(s) on the Vessel, which conveyance(s) will be the payment of consideration on behalf of Transatlantic but which possibly would not mention Transatlantic in the payment details.

## Requested Relief

18. To date, Transatlantic has not paid the outstanding balances for (1) OSM's Management Fee, and (2) reimbursement due to OSM. These amounts total $109,287.89, which sum Transatlantic is obligated to pay under the terms of the Management Agreement. Transatlantic has stated to OSM that it will not be able to settle these invoices.

19. Transatlantic's refusal and/or failure to remit payment of $109,287.89 constitutes a breach of its obligations under the Management Agreement.

20. The terms of the Management Agreement call for arbitration in London and the application of English law. OSM intends to commence arbitration in London in the near future.

21. While all disputes arising out of the Management Agreement are to be arbitrated in London, the action herein is submitted in accordance with Rule B of the Supplemental Rules of

Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure as well as 9 U.S.C. § 8, is not and cannot be considered a waiver of the Management Agreement's arbitration clause.

22. Under English law and in London arbitration, arbitration awards regularly include costs, including a reasonable allowance for attorneys' fees.

23. Clause 11.3 of the Management Agreement provides that Transatlantic will indemnify OSM against and in respect of all costs, losses, damages and expenses (including legal costs and expenses on a full indemnity basis) which OSM may suffer or incur (either directly or indirectly) in the course of the performance of the Management Agreement.

24. Upon information and belief, it will take three years to arbitrate this dispute to conclusion. Under relevant English law, interest is to be computed on the basis of the U.S. Prime Rate (currently 4.0%), compounded every three months, resulting in the following estimated interest and attorneys' fees and costs.

| | |
|---|---|
| Interest: | $ 13,860.44 |
| Attorneys' Fees: | $ 75,000.00 |
| Arbitrators' Fees: | $ 10,000.00 |
| Total Principal Claim: | $ 109,287.89 |
| **Total Sought:** | **$ 208,148.33** |

25. Defendant Transatlantic Lines Inc. is not found within the Southern District of New York but does have goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which

belongs to it, is claimed by it, is being held for it or on its behalf, or which is being transferred for its benefit, within the jurisdiction at the following financial institutions: Bank of America, N.A.; Bank of China; The Bank of New York; Citibank, N.A.; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; UBS AG; Wachovia Bank, N.A.; Société Générale; Standard Chartered Bank; BNP Paribas; Calyon Investment Bank; American Express Bank; Commerzbank; ABN Amro Bank; Bank Leumi USA; Banco Popular; Bank of Tokyo-Mitsubishi UFJ Ltd.; or any other financial institution within the Southern District of New York.

      **WHEREFORE**, Plaintiff demands judgment as follows:

      1.    That process of attachment and garnishment may issue against the defendant Transatlantic Lines Inc., and if defendant cannot be found, then that its goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to it, is claimed by it, is being held for it or on its behalf, or which is being transferred for its benefit, within the district may be attached in an amount sufficient to answer plaintiff's claim;

      2.    That defendant Transatlantic Lines Inc., and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

      3.    That judgment be entered in favor of OSM Ship Management AS, and against Transatlantic Lines Inc., in the amount of $208,148.33 (including estimated interest, expenses, and attorneys' fees);

4. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

5. That this Court grant OSM Ship Management AS such other and further relief which it may deem just and proper.

Dated: New York, New York
November 17, 2008

HOLLAND & KNIGHT LLP

By: *[signature]*

Michael J. Frevola
Christopher R. Nolan
195 Broadway
New York, NY 10007-3189
Tel:  (212) 513-3200
Fax:  (212) 385-9010

*Attorneys for Plaintiff*
*OSM Ship Management AS*

## VERIFICATION

STATE OF NEW YORK      )
                       :ss.:
COUNTY OF NEW YORK     )

MICHAEL J. FREVOLA, being duly sworn, deposes and says:

I am a member of the firm of Holland & Knight LLP, counsel for OSM Ship Management AS ("OSM"), plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by OSM and corresponded with OSM's representatives regarding this matter. I am authorized by OSM to make this verification, and the reason for my making it as opposed to an officer or director of OSM is that there are none within the jurisdiction of this Honorable Court.

*[signature]*
Michael J. Frevola

Sworn to before me this
17th day of November, 2008

*[signature]*
Notary Public

# 5802891_v1

DIALYZ E. MORALES
Notary Public, State Of New York
No. 01MO6059215
Qualified In New York County
Commission Expires June 25, 2011

11